Plaintiff, a licensed attorney at law, instituted suit against the Succession of Henry Jefferson, deceased, and his heirs, being his seven surviving children, to recover on quantum meruit fees due him for services rendered to the deceased in two suits in the Twenty-Sixth Judicial District Court, Parish of Bossier, and for Fifty ($50) Dollars costs advanced in one of the cases as a condition precedent to the lodging of appeal therein in the Supreme Court. Complying with an order of the court, rendered on defendants' motion, plaintiff, by amended petition, divided his demand as follows:
(1) For services in the suit of Mary Lott Jefferson vs. Henry Jefferson, $250. This suit was for divorce.
(2) For services in the suit of Charles R. Stone v. Henry Jefferson et al., $250. This suit was for a partition of 116 acres of land.
(3) In the office consultations, $250. $50 of this amount has been remitted.
Plaintiff alleged the record facts and history of each of said suits, the specific service he rendered therein and the reasonableness of the fees charged in view of the character of the litigations, the value of the property involved, and the nature of the services rendered. He also alleged:
"That the said Henry Jefferson and your petitioner agreed that your petitioner would be paid for the services which he rendered in both suits at the final termination of the litigation, and that the compensation of your petitioner would be fixed at that time.
"That the said Henry Jefferson had no funds with which to pay your petitioner, and that it was contemplated that the property in question might have to be disposed of in order to pay your petitioner for his legal services."
Defendants admit plaintiff's employment by their father to represent him in the divorce suit and to represent him and them in the partition suit, as alleged, but aver that the deceased paid plaintiff the sum of Two Hundred Twenty-Five ($225) Dollars for his services therein, which amount was more than the value of the services. They aver that the deceased gave to plaintiff the Fifty ($50) Dollars which he paid out as costs in the case appealed to the Supreme Court; that there were no consultations between plaintiff and the deceased except those pertaining to or connected with said two suits and for these he is not entitled to recover any amount in excess of the fees charged and paid.
The court, after first trial, rejected plaintiff's demand and dismissed his suit. A new trial was granted on plaintiff's application and additional testimony was introduced by him, after which judgment for Two Hundred Fifty ($250) Dollars was rendered in his favor. Both sides appealed to this court.
Defendants firstly argue that plaintiff has not substantiated his right to recover, if any amount be due him, because the proof submitted does not meet the requirements of Section 2 of Act No. 11 of 1926, which reads as follows:
"That parol evidence shall be incompetent and inadmissible to prove any debt or liability upon the part of a party deceased, if a suit upon the asserted indebtedness or liability shall have been brought within *Page 632 
a delay of twelve (12) months after the death of the deceased,unless it consists of the testimony of at least one crediblewitness of good moral character, besides the plaintiff; or unless it be to corroborate a written acknowledgment or a promise to pay, signed by the debtor."
Specifically, it is argued that plaintiff offered only his own testimony to prove his case. The lower court sustained this contention at the end of the first trial and predicated judgment thereon. We do not know whether the court changed its opinion on the legal proposition involved or decided that the proof submitted after rehearing met the Act's requirements.
The Act is not applicable to the facts of the case. There is no dispute that plaintiff was employed by the deceased Henry Jefferson, and, of course, it follows that he was obligated to pay plaintiff for his services. That is admitted. Therefore, the existence of the "debt or liability" referred to in the Act, is admitted. Defendants plead that the "debt or liability" has been discharged by payment. Plaintiff denies the alleged payment. This tenders an issue to be decided. If the plea of payment is not sustained by the proof, plaintiff is entitled to recover the value of the services admittedly rendered by him. This is the alternative question for decision.
Henry Jefferson was married twice. He first married Pennie Woodson. Defendants are the issue of that marriage. Pennie died in 1929. During the marriage, Henry Jefferson and Mary P. Leviston, a widow, jointly acquired the Southwest Quarter (SW 1/4) of the Northeast Quarter (NE 1/4) and the West Half (W 1/2) of the Southeast Quarter (SE 1/4), Section 30, Township 16 North, Range 10 West, in Bossier Parish, containing 116 acres. This land in 1928 sold for taxes of 1927 under an assessment to these purchasers and was adjudicated to Sam Feist. While the title thus reposed in Feist, Henry Jefferson married Mary Lott. There was no issue of that marriage.
On April 23, 1931, Sam Feist purportedly sold to Mary P. Leviston for a price of Two Hundred Eighteen and 95/100 ($218.95) Dollars, entirely on credit, evidenced by her note secured by mortgage and vendor's lien on the land conveyed to her, the Southwest Quarter (SW 1/4) of the Northeast Quarter (NE 1/4) and the North 22 acres of the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4), less a portion off of the north side included in Lot 1 in said Section 30, containing 58 acres; and on same date Feist purportedly sold to Henry Jefferson the remaining 58 acres of the tract, being the Southwest Quarter (SW 1/4) of the Southeast Quarter (SE 1/4) and 18 acres off of the south side of the Northwest Quarter (NW 1/4) of the Southeast Quarter (SE 1/4), Section 30.
On September 1, 1936, Mary Lott instituted suit against Henry Jefferson in Bossier Parish seeking absolute divorce. Therein she alleged that the 59 acres described in the deed from Feist to him was an asset of the community between them. She claimed alimony and sued out temporary restraining order prohibiting Henry from disposing of or encumbering any of the community property. Plaintiff was employed by Henry to defend him in this suit. Answer was promptly filed. The community character of the land was specifically denied, but, on the contrary, it was affirmatively alleged to be the separate, paraphernal property of the defendant. The rule nisi was continued and refixed for trial several times and finally expired. On November 28, 1938, the defendant, through plaintiff as his counsel, amended his answer and prayed for final divorce on the ground that he and the plaintiff had lived separate and apart for more than two years. The case on its merits was never tried. It was pending on April 3, 1940, the date of Henry's death.
It is admitted by all concerned that interest in the divorce suit abated when answer therein was filed asserting that the land involved was not community property between Henry Jefferson and Mary Lott, but was the separate, paraphernal property of the former.
Mary P. Leviston defaulted in payment of the note she gave Sam Feist to evidence the purchase price of the sale to her. Charles R. Stone, who had prompted the divorce suit, acquired the note and conceiving the idea that the deeds to Jefferson and Mary Leviston operated only as a redemption of the property from the tax sale to Feist, took deed from Mary to an undivided one-half interest in the 116 acre tract. Acting on the theory of undivided ownership, Stone, on May 10, 1937, instituted suit against Henry Jefferson and the defendants in the present suit, children *Page 633 
and heirs of his first wife, for partition of the 116 acre tract by licitation. He alleged that he was owner of an undivided one-half interest in the tract and that the defendants owned like interest therein.
When served with process in the partition suit, Henry Jefferson naturally sought plaintiff's advice and assistance. He employed plaintiff to represent him and his children in that litigation.
It is argued, and doubtless is well founded, that Stone's purpose was to force a sale of the 116 acre tract to effect a partition by licitation at which the defendants, all colored people of modest means, would be financially helpless to protect themselves at the bidding.
The southern end of the tract of 116 acres touches Lake Bisteneau and its value had begun to increase with the movement looking to the construction of a dam at the lower end of the lake, designed to increase the water level thereof. If the lake should be raised sufficiently to give the land frontage thereon, it would become valuable for camp sites.
Plaintiff herein, with Henry Jefferson's approval, adopted delaying tactics in the case while on appeal, believing that the interest of all concerned would be best subserved by that course. The dam was constructed with funds appropriated by the Legislature and the value of the land did increase substantially. Its value was not over $7.50 per acre when the divorce suit was filed, but when the Supreme Court decided the partition case in February, 1941, its value had more than quadrupled.
Plaintiff promptly filed answer on defendants' behalf in the partition suit. It is denied therein that Stone owned any interest in the south 58 acres of the 116 acre tract conveyed to Henry Jefferson by Sam Feist. In effect, the suit is further resisted on the grounds that the sales from Feist to Jefferson and Mary Leviston simply amounted to a partition of the property between the grantees, and that the tax sale to Feist was thereby redeemed. These defenses were overruled after trial which consumed only about one hour, and judgment was rendered on November 26, 1937, as prayed for by the plaintiff. The defendants appealed the case to the Supreme Court. To that time plaintiff solely represented these defendants in the case, but soon after the death of Henry Jefferson, which occurred while the case was pending in the Supreme Court, the situation underwent a complete change.
On the day Jefferson was buried plaintiff got in touch with his children, all present for the funeral, and informed them of the status of the case in the Supreme Court. He advised them that it would be necessary that they be judicially recognized as his heirs, be sent into possession of his property and be made parties, as such heirs, in the case. They did not authorize plaintiff to do this for them but thereafter, in effect, discharged him as attorney and engaged the counsel who presently represents them. This counsel represented the heirs in the Supreme Court by writing brief and arguing the case. The judgment of the lower court was reversed and the defenses alleged upon in the lower court sustained. See Stone v. Jefferson, 196 La. 1057,200 So. 461.
To compensate present counsel for services rendered in the Supreme Court and in having the heirs judicially recognized and placed in possession, etc., defendants conveyed to him the south 19 1/3 acres of the 58 acres, this being the portion which is adjacent to Lake Bisteneau, and the most valuable per acre.
Plaintiff, as a witness in his own behalf, at length gave the details of the services he rendered in the two cases. He made several trips to Benton, parish seat of Bossier Parish, fifteen miles from his office in Shreveport. Necessarily, he had to examine the records of that parish to inform himself as regards the history and title to the land involved, in order to intelligently defend the suits. Witnesses were interviewed and the value and character of the land was learned from personal inspection and from persons well acquainted therewith. However, neither case bristled with complications. The partition case did involve legal questions about which there was serious dispute between counsel and as to which the courts differed.
There is no doubt that plaintiff did render faithful and efficient services to the deceased intermittently in the suits, although the value of the property involved was not great. He was discharged just prior to the time the case was heard in the Supreme Court. The judgment of that court vindicated the soundness of the defenses advanced by him. *Page 634 
The charge for office consultations must be eliminated as a serious factor in the case. These consultations invariably concerned one or the other of the suits. No separate charge should be made therefor. When an attorney accepts employment for a litigant it goes without saying that consultations must be had from time to time as the case progresses. These on the part of counsel constitute a valuable portion of the services he is obligated to render for the fee he charges in the beginning or which he ultimately expects to receive. It is largely from consultations that an attorney is enabled to intelligently and efficiently prosecute or defend cases.
We think the plea of payment has not been proven. The burden for so doing rested upon the defendants. Their evidence on the issue consisted of the testimony of one of the defendants who said he was present in plaintiff's office twice and saw his father pay plaintiff on one occasion One Hundred Sixty-Five ($165) Dollars in cash and on another Fifty ($50) Dollars in cash; and, the testimony of four of the defendants that on the day their father was buried, while in plaintiff's office he was asked by one of them what amount, if any, the deceased was due him for professional services, to which he replied: "Nothing". The defendant who claims to have seen the two payments made is positive both occurred in 1936. At that time the partition suit had not been filed. He further stated that the money was paid for services in the case that "went to the Supreme Court". If this is true, then no payment was made in the divorce case. This man is woefully in error as to the time the payments were made, if made at all and for the purpose he says.
Plaintiff strenuously denies that any payments were made to him by the deceased. He and his secretary, while the suits were pending, testified that his invariable rule is to enter in a cash book the amount of all fees collected with identifying designation, deposit the amounts thereof in bank, and pay bills, etc., by check; that no entry whatever of a payment by Jefferson appears in his books and records; that this system was adopted and followed largely for income tax purposes; that he invariably gives receipts for fees paid him. Plaintiff tendered his records to substantiate his and his secretary's testimony on this issue, but, on objection, the records were ruled out. He also offered to introduce the testimony of the auditor who audited his accounts for the period involved, but this offer was rejected.
As regards the testimony of the four defendants about plaintiff telling them that their father owed him nothing for his services and that he had been paid in full, plaintiff denies positively making such statement, and pertinently asks: If he made this statement to these defendants why did they engage other counsel to handle the case in the Supreme Court and pay him an additional fee in property many times greater in value than the amount which they assert had been paid plaintiff for his services in both suits? Answering his own question, plaintiff asserts that it does not make sense. We are not prepared to dissent.
Even though it be conceded arguendo that Jefferson paid plaintiff the Two Hundred Fifteen ($215) Dollars, it is obvious there would be a balance due him because, after expending Fifty ($50) Dollars of this amount for costs, there would remain only One Hundred Sixty-Five ($165) Dollars to be applied on fee account. It is certain the services rendered in the two cases had a value substantially in excess of this amount.
The testimony of two members of the Shreveport Bar corroborates that of plaintiff as to the value of the services in the two suits. The trial judge, under whose eye, in a large measure, the services were rendered, and who, from the records, was fully informed as to the character of the issues in both cases, did not accept in full the opinions of these attorneys as to the value of the services involved.
Attorneys of the Benton Bar testified that the customary fee charged there for a simple negro divorce suit was Twenty-Five ($25) Dollars, and where property was involved, the fee is generally increased to not more than Fifty ($50) Dollars. These amounts only covered services in the District Court. An additional fee would be charged in event of an appeal. Counsel for Stone in the partition suit charged One Hundred ($100) Dollars to represent him in the District Court. Since plaintiff does not live in Benton, but fifteen miles therefrom, this fact would to some extent affect the quantum of fees due him. Traveling expenses would be a factor not to be entirely overlooked; also, that of time from his office. *Page 635 
We could give no convincing reason for disturbing the judgment of the lower court on the quantum question and for this reason and those herein assigned, we have decided to affirm the judgment and it is so ordered. Defendants are cast for all costs.